**SOUTHWEST CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, et al., Plaintiffs,**

v.

**Bruce BABBITT, Secretary of the Interior, Defendant.**

**No. CIV. 94–2036–PHX–RMB.**

United States District Court,
D. Arizona.

June 6, 1997.

Matt Kenna, Kenna & Associates, Durango, CO, Daniel John Rohlf, Portland, OR, for Plaintiffs.

Eileen Sobeck and Teri Thomsen, U.S. Dept. of Justice, Washington, DC, for Defendant.

## ORDER

BILBY, Senior District Judge.

### I. INTRODUCTION.

This Court has been asked to once again consider government action in relation to listing the northern goshawk (*Accipiter gentilis*) under the Endangered Species Act ("ESA"). The Plaintiff, Southwest Center for Biological Diversity ("Southwest") has requested this Court to find that the Fish and Wildlife Service's ("FWS") May 26, 1996 Finding ("Finding") denying the Plaintiff's Petition to list the "northern goshawk west of the 100th meridian under the ESA was arbitrary and capricious."

Southwest argues that the Finding is arbitrary and capricious because it is based upon a policy for listing "distinct population segments" ("DPSs") of endangered species

which is contrary to the ESA. The policy of the FWS is that there can only be one subspecies in any one particular DPS listing. *See* 61 Fed.Reg. 4722. The FWS supports its decision by arguing that there is nothing in the ESA which prohibits its current policy for listing DPSs of endangered species under the ESA.

The parties have filed cross-motions for summary judgment. *Amici* Apache County has filed an *amicus* brief in support of the Defendant's Motion for Summary Judgment.

Also pending before the Court is Southwests' Motion to Strike the Declaration of Jamie Clark and the accompanying report entitled "Northern Goshawk and Forest Management in the Southwestern United States." Southwest argues that the declaration and report should be stricken because they were not considered by the FWS and are therefore not part of the record below. The FWS has not responded to the motion, allowing this Court to grant the motion pursuant to Local Rule 1.10 of the Rules of Practice of the United States District Court for the District of Arizona. After independent consideration of the merits of Southwest's Motion to Strike, this Court **GRANTS** the motion and will not consider the Declaration of Jamie Clark, or the accompanying report, in its deliberations in this matter.

### II. UNDISPUTED FACTS/PROCEDURAL HISTORY.

This case began in 1991 after Southwest petitioned the FWS to list the "northern goshawk located west of the 100th meridian"[1] as a "distinct population segment" ("DPS") which was endangered under the ESA. Under the ESA, a species or subspecies or a "distinct population segment" of a species or subspecies may be listed as endangered or threatened. *See* 16 U.S.C. § 1532(16). The FWS denied the Southwest's petition on the grounds that the "northern goshawk located west of the 100th meridian" was not a DPS because there was no evidence of reproductive isolation or genetic differentiation with the goshawk in the eastern United States. *See* 57 Fed.Reg. 28,-

---

**1.** Unless otherwise stated, all references to "northern goshawk" in this Order with mean

"northern goshawk located west of the 100th meridian."

474–76. Thus, the FWS concluded that Southwest failed to prove that the "northern goshawk located west of the 100th meridian" was a DPS because the northern goshawk habitat was contiguous from the western United States to the eastern United States. *See id.* Southwest then filed suit, alleging that the decision of the FWS was arbitrary and capricious.

This Court's decision of February 22, 1996 agreed with Southwest, and found that the decision of the FWS *was* arbitrary and capricious for two reasons. First, there was no clear and consistent policy in the FWS regarding the definition of a DPS and, in other cases, neither reproductive isolation nor genetic differentiation were required for a finding of a DPS. *See Southwest Center for Biological Diversity v. Babbitt*, 926 F.Supp. 920, 926 (D.Ariz.1996). Second, the FWS relied upon a 1991 Draft Policy defining DPS when considering Southwest's *1992* Petition regarding the northern goshawk. At the time the Petition was considered, a 1992 Draft Policy was available. FWS should have relied on the 1992 Policy since the ESA requires FWS to use the "best available data". *See id.* at 927.

After finding that the decision of the FWS was arbitrary and capricious, this Court remanded the Petition to FWS for a new 90–day determination. This time, the FWS evaluated the Petition based upon the Final DPS Policy which was adopted on February 7, 1996. On May 28, 1996, FWS made another negative 90–day Finding, and denied the Petition. *See* 61 Fed.Reg. 28,834 The reasoning of the FWS in denying the Petition was that the Final DPS Policy only allows for one subspecies per DPS, and the Petition contained three (3) subspecies of goshawks. *See id.* at 28,835. In its Finding denying the Petition, the FWS claimed that there are three subspecies of northern goshawk west of the 100th meridian, 1) A.g. atricapillus, 2) A.g. laingi, and 3) A.g apache. *See id.*

Thereafter, Southwest filed a Motion for Contempt, arguing that FWS did not make a new 90–day Finding based upon statutory obligations as this Court required in its remand. The Motion for Contempt was denied and Southwest was instructed to pursue its administrative remedies regarding the 90–day Finding, and then to move to re-open this case and amend its Complaint if it was dissatisfied with the results of the administrative procedure. Southwest followed the instructions of this Court, and a Supplemental Complaint was filed on October 16, 1996.

### III. STANDARD OF REVIEW.

■ Judicial review of administrative decisions involving the ESA is governed by the Administrative Procedure Act, 5 U.S.C. § 706. *See Pyramid Lake Paiute Tribe of Indians v. United States Dep't of the Navy*, 898 F.2d 1410, 1414 (9th Cir.1990). Under § 706, the reviewing court must first determine whether the language of the statute is clear. If, through the language of the statute, the intent of Congress is clear, then both the court and agency must give effect to the unambiguously expressed intent of Congress. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If, however, the statute is "silent or ambiguous with respect to the specific issue, the court does not simply impose its own construction on the statute ... Rather, ... the question for the court to consider is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Administrative decisions must be upheld unless they are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782.

The scope of judicial review is narrow, and this Court is not permitted to substitute its own judgment for a reasonable determination made by the administrative decision-maker. *See Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. Although a court must defer to a reasonable statutory interpretation by an agency if a statute is not clear, the agency is "entitled to considerably less deference" where an agency's interpretation of a relevant provision conflicts with the agency's earlier interpretation than where there is a consistently held agency view. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434

(1987), *quoting Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981).

The parties agree that summary judgment is the appropriate vehicle for resolving a challenge to a federal agency's administrative decision when review is based primarily upon a preexisting administrative record. *See Florida Fruit and Vegetable Ass'n v. Brock,* 771 F.2d 1455, 1459 (11th Cir.1985).

## IV. DISCUSSION.

There are two issues which must be decided by this Court. First, has the FWS acted arbitrarily and capriciously and abused its discretion in rejecting Southwest's Petition on remand? Second, does the policy for identification of DPSs, which was adopted by the FWS on February 7, 1996, violate the ESA?

Under the ESA, a threatened species must be listed when it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). Species is defined as "any subspecies of fish or wildlife or plant and any *distinct population segment* of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16)(emphasis added). The term "distinct population segment" is not defined in the ESA, nor does the ESA set forth any restrictive criteria for defining a "distinct population segment".

## A. *Has the FWS Acted Arbitrarily and Capriciously and Abused Its Discretion in Rejecting Southwest's Petition on Remand?*

The Court notes that the FWS has been less than clear on the qualifications for a DPS. As noted above, the first time that Southwest petitioned for a listing for goshawks, the Petition was rejected by the FWS because it failed to show evidence of reproductive isolation or genetic differentiation with the goshawk of the eastern United States. *See* 57 Fed.Reg. 28,474–76. After the FWS Finding was reversed and remanded by this Court, FWS then rejected the Petition under its new Policy of "only one subspecies per DPS". In other words, South-

west's Petition was first rejected because the goshawks are too homogeneous throughout North America, and then rejected because there are too many variations of goshawks to justify a DPS in the west. The actions of the FWS show the Court that the agency's handling of listing petitions involving DPSs has not been clear and consistent. The Court's view of the lack of consistency in the agency's actions is also furthered by the examples of handling DPS petitions involving other species, such as the silver rice rat and the "least tern". *See* 56 Fed.Reg. 19,809, 19,811–12 (April 30, 1991); 50 Fed.Reg. 21,784, 21,792 (May 28, 1985).

The Court is aware that when it reversed and remanded previously, the FSW was specifically ordered to consider Southwest's Petition in light of the latest DPS policy. The Court's reasoning in ordering the FWS to consider Southwest's Petition in light of their latest policy was that the ESA specifically directs the agency to use the "best scientific and commercial data available" in evaluating petitions. *See* 16 U.S.C. § 1533(b)(1)(A); *Southwest Center,* at 927. Contemporaneous to the Court's decision to reverse and remand, the FWS published a Final Policy. *See* 61 Fed.Reg. 4722 (Feb. 7, 1996).

The Final Policy states that "the organisms in a population are members of a single species or lesser taxon." 61 Fed.Reg. 4722 (Feb. 7, 1996). The FWS contends that this means that there can only be one subspecies in a single designated DPS application. FWS's interpretation of the Final Policy of allowing for "only one subspecies" per DPS is not at all clear on the face of the policy. Thus, an individual or organization submitting a petition may not know that a DPS may only contain one subspecies. At a hearing on these motions, the government admitted that Southwest's northern goshawk Petition was the first in which FWS had applied the "only one subspecies" rule. Thus, it appears as if Southwest did not have notice that its Petition would be scrutinized under an "only one subspecies" rule. Southwest complains that if it had notice, it would have expanded its Petition to three separate Petitions, one for each subspecies.

The documents in the record support the fact that Southwest was denied the opportunity to fairly present its Petition because it was not given the opportunity to amend its Petition. For example, document I.C.l.a. of the Supplemental Administrative record is a memorandum from a Field Supervisor who evaluated the Petition. The Field Supervisor notes that, since the Petition contained more than one subspecies, the Service's "normal way of doing business" would be to contact the petitioners to amend their Petition.

Also contained in the administrative record is the Endangered Species Petition Management Guidance book, which is an internal publication of the FWS. The directive given to FWS's employees in this document is that they have the discretion to alter the scope of a petition. See AR IIb. Thus, there was nothing which prevented FWS's employees from contacting Southwest and explaining its position on their Petition following remand, and requesting that the Petition be amended. Instead, FWS simply again rejected the Petition on remand, an action which was sure to guarantee future litigation.

The government's only response to why the Petitioners were not given the opportunity to amend was that this matter was currently in litigation. From this response, the Court concludes that if a petitioner was not in litigation with the FWS, and if that petitioner submitted a petition to the FWS which conflicted with the "only one subspecies" rule, the petitioner would be given the opportunity to amend their petition. This position by the FWS is evidence that the FWS acted arbitrarily and capriciously in rejecting Southwest's Petition on remand without allowing Southwest the opportunity to amend the Petition.

The evidence that FWS has acted arbitrarily and capriciously is furthered by the fact that the FWS's actions have only served to lengthen the amount of time until goshawks may be listed under the ESA, if such listing is warranted. The FWS has handled the Petition to list the goshawks in this manner despite the fact that there is evidence in the record that goshawks may be endangered. See A.R. I.A.2. Some of this evidence has come from the FWS itself. For instance,

the Phoenix Ecological Services District Office of FWS produced a draft opinion which found that the Petition presented substantial evidence that the petitioned action may be warranted. See A.R.I.D. 32. A consultant in the United States Forest Service found in 1988 that the goshawk population in northern New Mexico was threatened, and that it represents only a fragment of a once larger population. See A.R. III 38, 39.

■ It is therefore this Court's conclusion that FWS acted arbitrarily and capriciously in rejecting Southwest's Petition without allowing Southwest the opportunity to conform with the "only one subspecies" rule. The Court's decision is based upon: 1) the fact that the "only one subspecies rule" was a new and not clearly defined policy, 2) normal administrative practice involving the amendment of petitions, and 3) the evidence in the record that the northern goshawk may in fact be endangered.

**B.** *Does the Policy for Identification of DPSs, Which Was Adopted by the FWS on February 7, 1996, Violate the ESA?*

■ The Court's analysis in Section "A" above is based upon the assumption the Final Policy of "only one subspecies per DPS" is in accordance with law. Southwest has asked this Court to find that this Policy is arbitrary and capricious and an abuse of the FWS's discretion. The scope of this Court's review is narrow, and this Court cannot substitute its own judgment for a reasonable determination made by an agency decisionmaker. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2872. The Court is also mindful, however, that an agency's determination is entitled to "considerably less deference" where that determination conflicts with an agency's earlier interpretation than if there has been a consistently held view by the agency. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987), *quoting Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981).

Here, the FWS utilized many draft policies in order to define DPS before adopting its

Final Policy. The Final Policy adopted by the FWS states, in part, that "the organisms in a population are members of a single species or lesser taxon." *See* 61 Fed.Reg. 4722 (Feb. 7, 1996). Since "taxon" is used in the singular, then the FWS argues that the Final Policy means there can only be one subspecies in a DPS.

In considering whether the Final Policy of the DPS is arbitrary and capricious and violates the ESA, this Court will look directly at the statute. In examining the language of the statute the Court notes that the ESA specifically states in the definition of "species" that a "species" may include *any* subspecies . . . . and *any* distinct population segment (DPS) of *any species*. *See* 16 U.S.C. § 1532(16)(emphasis added). The ESA *does not* refer to the listing of DPSs of *subspecies*. This points to Congressional intent since, if Congress had intended that a DPS contain only one subspecies, it would have allowed only the listing of "DPSs" of *subspecies*. Instead, the statute reads "any distinct population segment of any species". *Id.*

The Court is also convinced that the legislative history in this matter weighs in favor of Southwest's interpretation of the ESA. Explaining lawmaker's refusal in 1979 to eliminate the Secretary's authority to list DPSs, the Senate noted that "[o]ne of the weaknesses of the 1969 Act which was corrected in the 1973 amendments was the inability of the FWS to adopt different management practices for healthy, threatened, or endangered populations." Senate Rpt. No. 151, 96th Cong., 1st Sess. at 7 (1979). This shows that Congress thought it was important for FWS to have the flexibility to protect a portion of a species according to that portion's conservation status. *Amici* Apache County, et al. argues that the legislative history supports the FWS's Final Policy in that Congress directed that alleged populations should be listed "sparingly" due to the "great potential for abuse of authority." S.Rpt. No. 151, 96th Cong., 1st Sess. 6–7 (1979). However, the Secretary has complied with this directive from Congress through the "significance" element of the DPS criteria. The "significance" element is only reached *after* a population is classified as a "discrete popula-

tion segment" under the policy. *See* 61 Fed. Reg. 4722, 4725 (February 7, 1996). Here, FWS never reached the significance criterion of the Policy.

The FWS also argues that the definition of a DPS as only containing one subspecies follows standard taxonomic nomenclature in that, since a subspecies is a subset of a species, then a distinct population segment is a subset of a single subspecies. However, as Southwest points out, the term "distinct population segment" appears nowhere in taxonomic science or literature. It appears to be some sort of hybrid language that Congress carved out which is not based upon taxonomy.

 Based upon the language of the ESA, and its legislative history, the Court concludes that the FWS's Final Policy for DPS, adopted on February 7, 1997, is arbitrary and capricious and an abuse of discretion. This Policy limits DPSs in a manner which was not contemplated by Congress in enacting the ESA and which is not supported by the information in the administrative record.

## V. CONCLUSION.

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent that the FWS's negative Finding on the Petition to list northern goshawks was arbitrary, capricious and unlawful because 1) Southwest was not given the opportunity to amend its Petition to conform with FWS's Final DPS Policy and 2) the Final DPS Policy is arbitrary and capricious and an abuse of FWS's discretion. **IT IS FURTHER ORDERED** that the Plaintiffs Petition is **REMANDED** to the FWS for a new ninety (90) day Finding which is consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiff shall submit an application for attorneys' fees and costs within fourteen (14) days of the entry of judgment. Defendant may file a responsive pleading within fifteen (15) days after service of the application. Any

reply thereto is due ten (10) days after service of the responsive memorandum.